# STATE OF VERMONT

# ENVIRONMENTAL COURT

In re: Appeal of Green } 
Mountain Habitat for Humanity } 
} Docket No. 19-1-02 Vtec 
} 
} 
In re: Appeal of Blair and } 
Devlin } 
} Docket No. 88-4-02 Vtec 
} 
} 

### Decision and Order on Motions for Summary Judgment

In Docket No. 19-1-02 Vtec, Green Mountain Habitat for Humanity appealed from the December 18, 2001 decision of the City of Burlington Development Review Board (DRB) upholding the Zoning Administrator's denial of its application to construct a single-family dwelling. That appeal was put on hold while Green Mountain Habitat for Humanity applied for and was granted a variance. Brian W. Blair and Danielle C. Devlin appealed from that decision in Docket No. 88-4-02 Vtec. Green Mountain Habitat for Humanity is represented by Norman C. Smith, Esq. and Catherine Kronk, Esq.; Mr. Blair and Ms. Devlin are represented by Robert J. Perry, Esq; the City of Burlington is represented by Kimberlee J. Sturtevant, Esq. As the parties have reversed roles in the two above-captioned cases, for the purposes of this decision we will refer to Green Mountain Habitat for Humanity as "Applicant" and to Mr. Blair and Ms. Devlin as "Lot 7 & 8 Owners"

Applicant seeks summary judgment in Docket No. 19-1-02 Vtec on whether Lot 9 may be separately developed under § 22.1.1 (Existing Small Lots) of the Burlington Zoning Ordinance; Lot 7 & 8 Owners seek summary judgment in Docket No. 88-4-02 Vtec on whether the construction of the proposed house on Lot 9 meets all of the five variance criteria[1] of 24 V.S.A. § 4468 and the City's zoning ordinance.

The following facts are undisputed unless otherwise noted.

A nine-lot subdivision was created in 1891, by a plan entitled "Ferguson and Scarff's Addition to Burlington, Vermont." Each lot has a width (frontage) of 50 feet along Batchelder Street and a lot depth of 125[2] feet. Lots 7, 8 and 9 of that subdivision are at issue in the present proceeding. The land is located in a Residential-Low Density (RL) zoning district, established in 1973.

Henry J. Giroux and Bernadette Giroux (the Giroux) owned Lots 5, 6, 7, 8, and 9 of that subdivision. From the land record volume numbers shown on Exhibit D, we can determine that they acquired Lot 7 first (Volume 87), before acquiring Lot 8. They acquired Lot 8, measuring 6,250 square feet in area, described as a vacant lot in their deed, in 1935 (Volume 104). The

Giroux next acquired Lot 5 (Volume 126). At some time prior to 1946, they built a house on Lot 8 as a single family dwelling, with a portion of the house and part of a driveway and parking area being in fact located on the next adjacent lot to the south, Lot 9. In 1946 the dwelling was converted to duplex use and given the addresses of 40 and 42 Batchelder Street. In 1948 (Volume 134), the Giroux purchased Lot 9 (44 Batchelder Street, on the corner of Home Avenue), measuring 7,000 square feet in area. Lot 6 was the last of the five lots to be acquired by the Giroux (Volume 150). At some time they constructed at least a driveway, parking area and stone wall on Lot 7, which also now contains the foundation of an old garage. During their ownership, the Giroux also planted trees on Lot 9 near the parking lot, and installed a picket fence in the back yard of Lot 8 that is located at least in part on Lot 9. They used Lots 7, 8, and 9 without regard to the interior boundaries of those lots, in connection with the use of the duplex dwelling.

In 1973, the Burlington zoning ordinance took effect which established a minimum lot size of 9,900 square feet for residential lots in this zoning district (§ 5.3.10 and Table 5-F of the Burlington Zoning Ordinance), and contained an exception to the minimum lot size for lots in existence on the effective date of the zoning ordinance. The existing small lot exception in § 22.1.1 of that ordinance states in pertinent part that:

Any lot of record as of April 26, 1973, may be developed for the purposes permitted in the district in which it is located even though not conforming to minimum lot size requirements, if such lot is not less than four thousand (4,000) square feet in area with a minimum width or depth dimension of forty (40) feet. . . .

The existing small lot exception in the state statute, 24 V.S.A. 4406(1), states that:

Any lot in individual and separate and non-affiliated ownership from surrounding properties in existence on the effective date of any zoning regulation, including an interim zoning regulation, may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less than one-eighth acre in area with a minimum width or depth dimension of forty feet.

Three daughters of the Giroux family, Laurette G. Cook, Claire G. Phinney and Marceline G. MacLean (" the Sellers" ), acquired all five lots from the Giroux estate in 1995. Before the sale of Lots 7 and 8 in 1999, Lots 5 and 6 were sold to Applicant. Lots 5 and 6 are not otherwise at issue in this appeal and the Court has not been informed whether they contain any structures.

As of 1999 Lot 8 had the address of 52 Batchelder Street. On August 11, 1999 a law firm applied to the City for a confirmation that the Lot 8 duplex was a permitted use, attaching affidavits from Sellers MacLean and Cook and other information as to the historic use of Lot 8 as a duplex. The application was approved in the form of a zoning permit/certificate of appropriateness the same day, issued to Seller MacLean and signed both by the Zoning Administrator and by the Planning Director; this action was not appealed to the ZBA and became final. On August 26, 1999, Sellers sold Lots 7 and 8, including the house, to Mr. Blair and Ms. Devlin in two separate deeds.

On April 26, 2001, Sellers sold Lot 9 to Applicant. In August, 2001, Applicant had a site plan of its lot prepared which revealed several encroachments of structures and uses from Lot 8 onto Lot 9. The southerly side[3] of the duplex house encroaches approximately three feet onto Lot 9. A picket fence behind (to the east) of the duplex house also extends from three to five feet onto Lot 9. The driveway and parking area used by the house encroaches fifteen feet onto Lot 9.

On September 24, 2001, Applicant applied for a permit (now on appeal in Docket No. 19-1-02), to construct a single-family residence on Lot 9. The house is proposed as a 1½ -story, four-bedroom house, measuring 24' x 42', with its shorter end oriented towards Batchelder Street and its front door and porch facing south to Home Avenue. As proposed, the north side of the house would be set back 13 feet from the property line (but only 10 feet from the encroaching portion of Lot 7 & 8 Owners' duplex). The six-foot-wide porch on the south side of the house, fronting on Home Avenue, would be set back 13 feet from the property line. The west side of the house, facing Batchelder Street, would be set back 15 feet from the property line. The east side of the house would be set back 68 feet from the east side property line.

The Zoning Administrator denied the application because the duplex on Lot 8 and its associated driveway/parking area encroaches onto Lot 9. He concluded that therefore Lots 8 and 9 had merged, disqualifying Lot 9 from existing small lot status. He reasoned that the combined size of Lots 8 and 9 would allow a maximum of two dwelling units under § 5.2.1, Table 5-B and § 5.2.3; the duplex already counted as the two allowed dwelling units. Further, he noted that the minimum setback from the duplex building already encroached onto Lot 9. Applicant appealed this denial to the DRB, which overturned the Zoning Administrator's decision but as a condition required Applicant to apply for a variance to build on the nonconforming Lot 9.

As a corner lot, Lot 9 is considered to have two front yards, and therefore it has two side yards and no rear yards. The required front yard setback is 15 feet, if Batchelder Street and Home Avenue are both considered to be local streets in this location (Table 5-C and 5-D). The required side yard setback is 10% of the applicable lot side dimension. Thus, on the side yard adjacent to Lot 8, the required setback for the house Applicant has proposed on Lot 9 would be 5 feet (10% of the 50-foot dimension), while the required side yard setback on the east side would be 12½ feet (10% of the 125-foot dimension). It meets both side yard setbacks. If those lots were considered to be rear yards rather than side yards, the proposal would also meet both rear yard setbacks of 12½ feet on the Lot 8 side and 31.25 feet on the east side.

Lot 9 measures only 7,000 square feet, less than the 9,900 square feet necessary under § 5.3.10. It may be developed as a preexisting small lot, despite its being undersized, only if it meets the requirements of § 22.1.1 and 24 V.S.A. § 4406(1). According to the Vermont Supreme Court's recent decision in In re Appeal of Stuart Richards, 13 Vt. L. Week 265, 267 (2002), the requirement for "separate and non-affiliated ownership" on the effective date of the zoning regulation that made it nonconforming must be imported into the City's regulations, even though the City has chosen to adopt a less restrictive standard[4]. Contiguous undersized parcels held under common ownership at the time a municipality's minimum lot size ordinance is enacted cannot qualify as existing small lots.

Because Lots 5, 6, 7, 8 and 9 are contiguous undersized lots that were under common ownership at the time the minimum lot size zoning regulations were enacted, some amount of merger[5] occurred in 1973, regardless of the additional minimum lot size requirements to support the duplex use of the house primarily on Lot 8, and regardless of the encroachment of that house onto Lot 9. This result is required under prior law as well as under the Richards case. While it would have satisfied the minimum lot size requirements and the duplex lot size requirements for lots 7 and 8 to have merged (instead of lots 8 and 9), Lot 9 could not have been left to be sold separately at that time as an undeveloped undersized lot. Lubinsky v. Fair Haven Zoning Board, 148 Vt. 47, 49 (1986). If the house extension actually located on Lot 9 was in existence in 1973, Lots 8 and 9 must also have merged at that time, as Lot 9 could not have been sold or used separately. Drumheller v. Shelburne Zoning Board of Adjustment, 155 Vt. 524, 529 (1990); Wilcox v. Village of Manchester Zoning Board of Adjustment, 159 Vt. 193, 195 (1992); and see discussion of those two cases in Appeal of Weeks, 167 Vt. 551 (1998).

For the parties' assistance in preparing for the telephone conference, we note that the parties did not supply either the application for or the decision granting the variance. In making their arguments on that issue, the parties should consider the extent to which a purchaser of property seeking a variance steps into the shoes of earlier owners. The parties should also address whether whatever variance was requested is the minimum variance that could provide relief; that is, whether a change in the proposed house's dimensions, design or location could eliminate any of the setback variance issues.

For the above reasons Applicant's Motion for Summary Judgment is DENIED and Summary Judgment is GRANTED to Lot 7 & 8 Owners on the issue of merger. This ruling appears to conclude Docket No. 19-1-02 Vtec. We will hold a telephone conference on December 20, 2002, to discuss the briefing schedule on Lot 7 & 8 Owners' Motion in Docket No. 88-4-02 Vtec, to discuss whether the parties want to pursue discussions of footnote 5 above, and to discuss whether anything remains to be decided or whether a final order can be entered in Docket No. 19-1-02 Vtec.

Done at Barre, Vermont, this 12th day of December, 2002.

_____
Merideth Wright
Environmental Judge

# Footnotes

1.    Applicant has not responded to this issue in its memoranda in either docket number. A search of the files shows that Attorney Smith filed a letter on September 23, 2002 under only Docket No. 19-1-02, stating his understanding that the Court would address the merger issue first, and that he would not be filing memoranda on the variance issue until the merger issue had been ruled on. However, because that letter was not filed under the docket number of the variance case, it did not come to the Court's attention at the time. Accordingly, we will rule in this decision and order only on the motions filed in Docket No 19-1-02, and will allow Applicant to file a responsive memorandum on the variance case as soon as reasonably possible. We will hold a telephone conference to discuss this decision and the schedule for that memorandum on December 20, 2002 (see enclosed notice).

2.    As the lots are identical in size, all being 6,250 feet in area (50' x 125'), the Court cannot tell when Lot 9 acquired the additional six feet of width shown on the drawing of Applicant's proposal (Exhibit I). That may have occurred in connection with the laying out of Home Avenue, as that street is not shown on the 1891 plan.

3.    This appears from the plot plan to be a projection of the house which may contain a porch or an added stairway, rather than an integral part of the structure of the house itself.

4.    Because it is not implicated by the facts of this particular appeal, we do not here address whether the City can have a minimum lot size of 4,000 square feet, in light of the state statute's requirement of at least an eighth of an acre. We take judicial notice that one-eighth of an acre is 5445 square feet.

5.    It is possible that at that time the five undersized lots totaling 32,000 square feet in area could have been reconfigured to create three lots conforming as to lot size. As Applicant now owns Lots 5, 6 and 9, and Lot 7 & 8 Owners now own Lots 7 and 8, it remains possible that some boundary adjustments in the side yards or backyards of the parcels could still be arranged to result in three parcels conforming as to lot size.